Markman, J.
(concurring in part and dissenting in part). At issue is whether either an “account stated” or an “amount owed on open account” claim is subject to the four-year limitations period of § 2-725 of the Uniform Commercial Code (UCC), MCL 440.2725, which applies to actions for breach of the legal obligations that result from the sale of goods.[1] I agree with the majority that the UCC’s four-year limitations period does not apply to an “account stated” claim because an “account stated” claim does not constitute an action for breach of the legal obligations that result from the sale of goods. Such a claim is not based upon the buyer’s failure to pay the seller for goods, but rather upon the buyer and seller having reached a subsequent and independent agreement that the buyer will pay the seller a specific dollar amount that reflects the aggregate amount owed for the goods. An “account stated” claim is an action to enforce the buyer’s subsequent and independent promise to settle the account, analogous to an action on a buyer’s promise to pay embodied in a promissory note, and is subject to the limitations period applicable to the promise to pay, i.e., the six-year limitations period governing general contract actions set forth in MCL 600.5807(8). However, unlike the majority, I believe *575 that the UCC’s four-year limitations period applies to an “amount owed on open account” claim when the balance owed on the open account arose from the sale of goods, as it did here, because such a claim constitutes an action for breach of the legal obligations that result from the sale of goods. An “amount owed on open account” claim is based on the buyer’s failure to pay the seller for goods, not on the buyer and seller having reached any subsequent and independent agreement that the buyer will pay the seller a specific dollar amount that they believe reflects the aggregate amount owed for the goods. Accordingly, I respectfully dissent from the majority’s analysis of plaintiffs “amount owed on open account” claim in which it concludes that the “amount owed on open account” claim is subject to the six-year limitations period governing general contract actions.
I. PLAINTIFF’S CLAIMS
Plaintiffs amended complaint set forth four causes of action: (1) breach of contract, (2) amount owed on open account, (3) account stated, and (4) unjust enrichment. Plaintiff did not appeal the dismissal of its breach of contract and unjust enrichment claims. Thus, only the “account stated” and “amount owed on open account” claims are at issue here. Regarding the “account stated” claim, plaintiff alleges that it submitted “statements of account” to defendant and that defendant either acknowledged the statements as correct, agreed to pay the balance shown on the statements, or never objected to the statements. Regarding the “amount owed on open account” claim, plaintiff alleges that it “supplied concrete on open account to Defendant from approximately October 30, 1991 through October 25, 2004,” that “Defendant did make payments on the *576 account on June 30, 1992 in the amount of $5,000.00, December 29, 1995 in the amount of $105.03, July 10, 1998 in the amount of $229.95, and September 25, 2002 in the amount of $327.02,” and that “Defendant has failed and refused to pay the [$92,968.57] balance on the open account.”
The sole issue here is whether these “account stated” and “amount owed on open account” claims are subject to the UCC’s four-year limitations period, MCL 440.2725, or the general six-year limitations period applicable to contract actions, MCL 600.5807(8). Defendant contends that because the underlying transactions were for the sale of goods, this action is subject to the UCC’s four-year limitations period regardless of whether the action is pleaded as an “account stated” or “amount owed on open account” claim. Plaintiff contends that “account stated” and “amount owed on open account” claims are independent causes of action governed by the general six-year limitations period, without regard to the underlying nature of the transactions giving rise to the claims.
The majority agrees with plaintiff that the six-year limitations period applies to both the “account stated” and “amount owed on open account” claims. I agree with the majority and plaintiff that the six-year limitations period applies to the “account stated” claim, but I agree with defendant that the UCC’s four-year limitation period applies to the “amount owed on open account” claim.
II. “ACCOUNT STATED” CLAIM
I agree with the majority that an “account stated” claim results from a separate and distinct bargaining process in which the parties sum up all the credits and debits flowing between themselves, “strike a *577 balance” or settle, and then enter into an agreement that the debtor shall pay the creditor a particular amount. Leonard Refineries, Inc v Gregory, 295 Mich 432, 437; 295 NW 215 (1940). When the parties “strike a balance” or settle, it closes the open account, transforming it into an account stated, and the ascertained balance is subject to a new limitations period because it constitutes an original and separate demand. Id. Any subsequent judicial inquiry concerns only whether the parties have in fact agreed on the amount due and whether that amount remains due. See Pelavin v Fenton, Davis & Boyle, 255 Mich 680, 683; 239 NW 268 (1931).
In other words, when an account becomes “stated,” it establishes a new cause of action against the debtor in the same manner that a debtor giving a promissory note to a creditor for an antecedent debt would create a new cause of action against that debtor independent of the original indebtedness. White v Campbell, 25 Mich 463, 468 (1872) (“[T]he agreed statement serves in place of the original account, as the foundation of an action.. .. The effect of the operation is said to be much the same as though the debtor had given his note for the balance[.]”). Accordingly, because the parties’ independent agreement here concerning the amount due under the account establishes the basis for defendant’s liability on the “account stated” claim, and because that liability is not based on the underlying transactions in goods out of which the original account stemmed, I agree with the majority that the six-year limitations period governing general contract actions in MCL 600.5807(8) applies to the “account stated” claim, not the four-year limitations period in § 2-725 of the UCC that would apply to the underlying transactions in goods out of which the original account stemmed.
*578 I disagree, however, with the majority’s discussion concerning when an “account stated” claim accrues for statute of limitation purposes. Specifically, I disagree with the majority that an “account stated” claim accrues “upon an adjustment of the parties’ respective claims against one another,” or “ ‘when assent to the statement of account is either expressed or implied ....’” Ante at 562 n 53, citing White, 25 Mich at 468. In Michigan, a breach of contract claim accrues “at the time the wrong upon which the claim is based was done regardless of the time when damage results.” MCL 600.5827. In other words, the limitations period begins to run on the date the contract is breached, not when the contract is formed as a result of the parties’ “assent” to the statement of account. The majority, I believe, misreads this Court’s statement in White, which merely describes the manner in which an open account is converted into an account stated, i.e., an open account becomes an account stated when there is “an adjustment of.. . claims.” White, 25 Mich at 468. The sentence on which the majority relies does not describe when an “account stated” claim accrues.[2]
*579 III. “AMOUNT OWED ON OPEN ACCOUNT” CLAIM
Further, I agree with the majority that an open account constitutes a commercial arrangement in which a seller allows a customer to buy on credit without a formal borrowing agreement or other guarantee as to the customer’s payment. That is, under an “open account” arrangement, the seller delivers goods to the customer and a series of credit charges are made on the customer’s open account without an express agreement between the seller and the customer as to when the customer will pay the seller for the goods. I further agree with the majority that the critical factor in deciding whether an account is open is whether the terms of payment are specified by the parties’ agreement or are left open and undetermined, and that there can be no open account where the parties have an express agreement defining their liabilities.
I disagree with the majority, however, as to the limitations period that applies when a seller sues a customer for the amount owed on open account and, as here, the open account has arisen from a UCC sale of goods. The majority concludes that the six-year limitations period governing general contract actions in MCL 600.5807(8) applies to an “amount owed on open account” claim when the account has arisen from a UCC sale of goods, but fails to provide a sufficient basis for so concluding. The majority provides almost no analysis concerning why the UCC’s four-year limitations period does not apply to such a claim. It merely mentions the relevant UCC statutory language once, in conclusory fashion, stating only that “[a]n open account claim is *580 not a breach of contract action for the sale of goods . . . Ante at 570. The majority does not offer any analysis of the relevant statutory language or offer any support for this assertion.
“The stated purposes of the [UCC] are ‘(a) to simplify, clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; [and] (c) to make uniform the law among the various jurisdictions.’ ” Neibarger v Universal Cooperatives, Inc, 439 Mich 512, 519; 486 NW2d 612 (1992), quoting MCL 440.1102(2) (second alteration in original).
“To achieve these goals, Article 2 of the [UCC] governs the relationship between the parties involved in ‘transactions in goods.’ ” Neibarger, 439 Mich at 519, quoting MCL 440.2102. Article 2 recognizes that modern commercial transactions may be conducted with little formality and few written agreements. Indeed, no writing is required when the goods have been received and accepted by the buyer. MCL 440.2201(3)(c). The parties do not even need to agree on the price term to have effected a valid transaction. MCL 440.2305(1) (price term can be left open and “[i]n such a case the price is a reasonable price at the time for delivery”). The UCC also recognizes that sellers will often sell goods to buyers on open account. That is, it recognizes that sellers will agree to sell goods to buyers on credit and deliver the goods to buyers before receiving any payment. As an example, MCL 440.2310(d) states that if “the seller is required or authorized to ship the goods on credit, the credit period runs from the time of shipment but postdating the invoice or delaying its dispatch will correspondingly delay the starting of the credit period.” And as *581 a further example, MCL 440.2511(1) states that “\u\nless otherwise agreed tender of payment is a condition to the seller’s duty to tender and complete any delivery.” (Emphasis added.) As stated in the official comments to the UCC:
The requirement of payment against delivery in subsection (1) is applicable to non-commercial sales generally and to ordinary sales at retail although it has no application to the great body of commercial contracts which carry credit terms. Subsection (1) applies also to . .. contracts which look to shipment by the seller but contain no term on time and manner of payment.... [Thomson West, Uniform Commercial Code: Official Text and Comments (2012-2013 ed), § 2-511, p 125.][3]
Thus, article 2 fully recognizes that there will be breaches of contracts for the sale of goods sold on open account.
The limitations period provision for article 2 provides:
(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued....
(2) A cause of action accrues when the breach occurs .... [MCL 440.2725.]
MCL 440.2106(1) defines “contract for sale” as including
both a present sale of goods and a contract to sell goods at a future time. A “sale” consists in the passing of title from the seller to the buyer for a price [MCL 440.2401]. A “present sale” means a sale which is accomplished by the making of the contract. [Emphasis added.]
*582 MCL 440.1201(H)[4] defines “contract” as follows:[5]
“Contract” means the total legal obligation which results from the parties’ agreement as affected by this act and any other applicable rules of law. (Compare “Agreement”.) [Emphasis added.]
And MCL 440.1201(3)[6] defines “agreement” as follows:
“Agreement” means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of deeding or usage of trade or course of performance as provided in this act [MCL 440.1205 and MCL 440.2208]. Whether an agreement has legal consequences is determined by the provisions of this act, if applicable; otherwise by the law of contracts [MCL 440.1103]. (Compare “Contract”.)
Applying these definitions, the question is whether an “amount owed on open account” claim constitutes “[a]n action for breach of” “the total legal obligation that results from the parties’ agreement” to “pass[] . . . title [of goods] . . . for a price[.]”[7] In contrast to an “account stated” claim, in which the basis for liability is the parties’ independent agreement concerning the amount due under the account, the basis for liability in an “amount owed on open account” claim is the underlying transactions that comprise the account. In “an open account. . . the items composing it must be *583 proved” because the parties have not reached an independent agreement as to the amount due under the account. A Krolik & Co v Ossowski, 213 Mich 1, 7; 180 NW 499 (1920). Because the plaintiff must instead prove its right to collect on each underlying transaction comprising a part of the account balance, the “amount owed on open account” claim is simply the equivalent of a suit for breach of the legal obligations that result from the parties’ discrete transactions that individually comprise the account. Accordingly, when the underlying transactions pertain to an agreement to pass title of goods from the seller to the buyer for a price, MCL 440.2106(1), as they do in this case, the four-year limitations period of MCL 440.2725(1) must be applied.[8]
*584 In its analysis of the “amount owed on open account” claim, the majority asserts, erroneously in my view, that “[a]n open account claim is not a breach of contract action for the sale of goods; it is an action to collect on the single liability stemming from the parties’ credit relationship regardless of the underlying transactions comprising the account.” Ante at 570 (emphasis added). But the very definition on which the majority relies for the emphasized language undermines the majority’s conclusion. Citing Black’s Law Dictionary (7th ed), p 19, the majority defines an “open account” as “1. [a]n unpaid or unsettled account. 2. [a]n account that is left open for ongoing debit and credit entries and that has a fluctuating balance until either party finds it convenient *585 to settle and close, at which time there is a single liability.” Ante at 553-554 (emphasis added) (citation and quotation marks omitted). As this definition makes clear, an “open account” is one open to dispute, where nothing has occurred to bind either party by the account statements. The very essence of an open account is that there is no “single liability” because the account has not been settled and closed. See ante at 554 (“This Court has characterized an open account as ‘one which consists of a series of transactions and is continuous or current, and not closed or stated.’ ”) (emphasis added) (citation and quotation marks omitted).[9]
The majority employs this “single liability” definition to assert that the underlying transactions comprising the account are somehow not the actual source of liability for an “amount owed on open account” claim, because all the underlying transactions merge into one “action on an open account” to collect on the “single liability.” Ante at 570. This, however, is incorrect. Again, an account stated, but not an open account, results in a single liability. The majority even implicitly recognizes in its discussion of the “account stated” claim that, absent an account stated, the causes of action based on the underlying transactions remain viable: “The account stated is a new, independent cause of action *586 superseding and merging the antecedent causes of action represented by the particular items included in the computation.” Ante at 558 (emphasis altered) (citation and quotation marks omitted).
This same principle was recognized by this Court in Phelps v Abbott, 116 Mich 624, 625; 74 NW 1010 (1898), in which we held that an open account does not constitute a single claim or a single cause of action, explicitly rejecting
the claim of the defendant that a debt due upon a continuous account of book entries, made in the ordinary course of dealing is entire, and cannot be split up into separate and distinct demands, so as to form the basis of several suits; that an open account containing many items, all of which are due, constitutes but one claim, and one right of action.
Likewise, in Kruce v Lakeside Biscuit Co, 198 Mich 736, 742; 165 NW 609 (1917), this Court acknowledged that, under Phelps and other cases, separate suits could be maintained on each transaction comprising an open account. In A Krolik & Co, 213 Mich at 7-8, citing Phelps, 116 Mich 624, this Court reaffirmed that “[t]he right to bring separate suits upon claims embraced in an open account has been recognized,” holding that the “[plaintiffs’ claim was not an open account. It constituted an entire demand. Separate actions could not be brought upon it.”
In furtherance of its argument that the underlying transactions comprising the open account are somehow not the actual source of liability, the majority asserts that “these [‘amount owed on open account’ suits] are premised on the debt due on the account and rarely discuss the underlying transactions, except to the extent that the transactions provide a defense to the debt.” Ante at 569. This, however, is also incorrect. Many cases discuss the underlying transactions be *587 cause, again, these transactions are the source of liability for an “amount owed on open account” claim and, if the transactions are disputed, they must be proved in order for the plaintiff to recover on an “amount owed on open account” claim. For example, in Holser v Skae, 169 Mich 484, 486; 135 NW 260 (1912), the plaintiff sued to recover a $352.87 balance that the defendant allegedly owed on an open account consisting of $5,152.47 worth of charges and $4,799.60 worth of credits. One item of charge was for “ ‘plumbing and heating as per contract’ ” and amounted to $3,151.25. Id. “The only matter disputed and put in issue by defendant was the heating and plumbing contract.” Id. at 487. Specifically, the defendant argued that the plaintiff had failed “to properly perform the contract” by failing to install “the heating system to conform with the specifications .. ..” Id. The defendant sought $271.48 of “recoupment,” which represented his costs in repairing the heating system. Id. The jury allowed the claim and deducted the $271.48 “from plaintiffs full claim, rendering a verdict for the balance in his favor.” Id. On appeal, the plaintiff argued:
In behalf of the plaintiff, it is claimed there could be no recoupment for the reason that this action is to recover a balance due on an open account between the parties and not on a part of the contract; that payments were made and credited from time to time on such open account as a whole, and plaintiff now sues on such account to recover a general balance remaining unpaid. One item of plaintiffs bill of particulars going to make up his account is this contract for plumbing and heating. He must prove it in order to recover. Defendant’s counterclaim is comprehended in, and connected with, and grows out of, said contract. It is a familiar rule that any damages may be recouped for which a cause of action growing out of the same transaction lies at the time of pleading. Plaintiff cannot defeat a right to recoup on a contract which he must prove in order to recover, by *588 including other items with it in his declaration and making a general claim for balance due on the whole under an open account. [Id. at 488.][10]
Indeed, the majority itself appears to acknowledge that, in contrast with an “account stated” claim, in which the underlying transactions that make up the account are irrelevant, the underlying transactions in an “amount owed on open account” claim are not irrelevant and must be proved:
[T]he caselaw defining [an “amount owed on open account” claim] is far less developed than the caselaw addressing accounts stated. This may be because a suit on an open account is, from a creditor’s perspective, a less desirable claim than an action on an account stated. In an action on an account stated, the creditor must present proof of the debtor’s express or implied assent to the balance due. Upon such proof, the underlying transactions become irrelevant. In an action on an open account, however, there is no assent to a balance due. Thus, the creditor may be required to establish the validity of the entries in the account. [Ante at 563 (emphasis added).]
In the instant case, in order for plaintiff to “establish the validity of the account” and prove its “amount owed on open account” claim, it must establish as fact that it completed each and every disputed “contract for sale” that comprises the open account and that defendant is *589 in breach of the same.[11]
The majority states:
Justice Markman, similarly to the out-of-state authority on which he relies, recognizes that article 2 of the UCC governs individual sales on credit but declines to acknowledge a distinction between individual sales on credit and serial sales on credit that lack an express agreement for the periodic payment of money that are melded into an account. Any lack of statutory analysis in this opinion stems from the absence of any express mention of actions on accounts in article 2 of the UCC. As previously discussed, this Court’s treatment of these collection actions has been anything but a model of clarity and consistency, and the disagreement between Justice Markman and the majority of this Court is not an unreasonable one. [Ante at 568 n 69.]
First, with all due respect, I do not “rely” on out-of-state authority for my conclusion. I rely on the relevant statutory language of the UCC and the abundant authority of this state that I have discussed throughout this opinion. Second, I fully acknowledge individual sales on credit, and I also fully acknowledge that multiple individual sales may be made on credit absent an express agreement as to any payment terms, periodic or otherwise. What I do not acknowledge, however, and what the authority of this state and every other state *590 does not appear to acknowledge, is that any of these circumstances can ever become “melded” into an open account.
Finally, the majority’s conclusion that “[a]n open account claim generally accrues on the date of each item proved in the account,” ante at 571 (emphasis added), directly contradicts its own “single liability” theory. How can there be a “single liability” when the statute runs on each item individually? The majority does not say. Notably, the authority on which the majority relies for its conclusion that “[a]n open account claim generally accrues on the date of each item proved in the account,” ante at 571, directly contravenes the majority’s “single liability” theory:
In the case of an open running account which is not also a mutual account, so far as the statute of limitations is concerned, the cause of action arises from the date of each item, and they are severally barred when as to them the statute has run. However, there is some authority that where all the items of a unilateral account constitute a single demand, the statute begins to run from the date of the last item, and the rule may be changed by statute so that, if the last item in the account falls within the period of limitation, it draws with it all the other items. [1 Am Jur 2d, Accounts and Accounting, § 22, p 644 (citations omitted) (emphasis added).]
Again, as already discussed, this Court has expressly rejected the argument that an “amount owed on open account” claim constitutes a single demand, accrues on the date of the last item entered into the account, or draws with it all debts accrued before that time. Phelps, 116 Mich at 625.[12] Although the majority believes that *591 an “amount owed on open account” claim constitutes a “single demand,” it does not explain why it is not applying the rule set forth in the very authority it invokes that is applicable “where all the items of a unilateral account constitute a single demand.” See 1 Am Jur 2d, Accounts and Accounting, § 22, p 644. Further, in its discussion of the hypothetical merchant, see ante at 569, the majority seems to rely upon the very rule that it is not applying because it implies that an “amount owed on open account” claim draws with it all debts accrued before that time:
Recognition of an action on an open account as an independent claim that arises out of the course of dealing between a creditor and debtor also promotes commerce without encouraging creditors to file lawsuits to preserve their right to collect on debts. Assume for example that a merchant sold goods and services on account whereby goods and services would be regularly delivered to a purchaser who in turn made sporadic payments in varying amounts as the relationship developed. As the parties’ relationship nears its fourth year, the merchant would have to insist on settlement of the account or risk the possibility that all or part of the balance due on account could be *592 declared uncollectable after the four-year limitations period on the sale of goods expires. Even if this merchant dealt exclusively in the sale of services, he would face the same dilemma in year six. [Ante at 569.]
It is unclear from the majority’s discussion why the merchant would not face this very same “dilemma” in “year six” given its holdings that a six-year limitations period applies to an “amount owed on open account” claim and that “[a]n open account claim generally accrues on the date of each item proved in the account.” Ante at 571. Is this because the claim draws with it all debts accrued before that time? The majority does not say.
Regarding the majority’s discussion of the hypothetical merchant, I believe that the majority misapprehends the nature of the open account. The merchant would have four years from the date of each transaction to sue on that transaction. The merchant could apply the debtor’s payments against the oldest transactions, unless the debtor indicated a contrary intent. Operating in this fashion, the merchant would not have to “insist on settlement of the account” when the parties’ relationship neared its fourth year, because the debtor’s “sporadic payments in varying amounts” would presumably have satisfied the oldest transactions that are approaching their four-year limitations period. The merchant would only need to sue the debtor if the debtor’s account was delinquent with regard to four years’ worth of transactions.[13]
*593 In sum, the majority fails to recognize that the presence in an “account stated” claim of an independent agreement concerning the “single liability” due under the account, and the absence of an independent agreement concerning any “single liability” in an “amount owed on open account” claim, is a critical distinction that determines which limitations period applies to each claim. That is, when the parties’ independent agreement concerning the amount due under the account constitutes the basis for liability (an “account stated” claim), the general six-year limitations period applicable to contract actions applies. When there is no independent agreement, and thus the basis for liability continues to be the underlying transactions in goods that comprise the account (an “amount owed on open account” claim), the four-year limitations period of the UCC applies, for there is no separate and distinct basis for the claim apart from the individual transactions in goods. For this reason, the majority is incorrect, in my judgment, in its assertion that “an open account claim is no more an action for a breach of a contract for sale than is an account stated claim.” Ante at 570 n 72.
IV CONCLUSION
I agree with the majority that an “account stated” claim arising out of transactions in goods is subject to the general six-year limitations period applicable to contract actions, MCL 600.5807(8). Thus, I concur with the majority’s decision to reinstate plaintiff’s “account stated” claim. However, I disagree with the majority that plaintiffs “amount owed on open account” claim is *594 subject to the same limitations period. Rather, the latter claim is simply the equivalent of a suit for breach of the underlying transactions in goods that comprise the account and is, therefore, subject to the four-year limitations period set forth in article 2 of the UCC, MCL 440.2725. Thus, I respectfully dissent from the majority’s decision to reinstate plaintiffs “amount owed on open account” claim. Accordingly, I would remand to the trial court so that plaintiff could proceed exclusively on its “account stated” claim.
Viviano, J., took no part in the decision of this case.

 The UCC as drafted by the National Conference of Commissioners on Uniform State Laws and the American Law Institute identifies the statute of limitations in question as § 2-725, while the comparable Michigan statute is identified as § 2725.

 This becomes clear when the sentence on which the majority relies is read in context:
The conversion of an open account into an account stated, is an operation by which the parties assent to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts. That it has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them. When accomplished, it does not necessarily exclude all inquiry into the rectitude of the account. The parties may still impeach it for fraud or mistake. But so long as it is not impeached, the agreed statement serves in place of the original account, as the foundation of an action. It becomes an original demand, and amounts to an express promise to pay the actual sum stated. The creditor becomes entitled to recover the agreed balance, in an action based on the fact of its acknowledgment by the debtor, upon an adjustment of their respective claims: *579 Ashley v. Hill, 6 Conn., 246 [1826], The effect of the operation is said to be much the same as though the debtor had given his note for the balance: Bass v. Bass, 8 Pick., 187 [Mass, 1829], [White, 25 Mich at 468 (emphasis added to the relevant sentence).]

 See also, e.g., MCL 440.2702(2) (“Where the seller discovers that the buyer has received goods on credit while insolvent.. . .”).

 The MCL 440.1201(11) definition of “contract” was superseded effective July 1, 2013, by the substantially similar definition now found at MCL 440.1201(2)(l).

 MCL 440.1201 is part of article 1. However, article 2 of the UCC states that “article 1 contains general definitions and principles of construction and interpretation applicable throughout [article 2].” MCL 440.2103(4).

 The MCL 440.1201(3) definition of “agreement” was superseded effective July 1,2013, by the substantially similar definition now found at MCL 440.1201(2)(c).

 The majority never addresses this particular question or considers this language derived from the UCC.

 This conclusion is supported by the overwhelming weight of authority in this country. See, e.g., May Co v Trusnik, 54 Ohio App 2d 71, 74-75; 375 NE2d 72 (1977) (“[A]n action brought by a merchant for the price of items purchased hy a customer on his or her charge account is governed by the four-year statute of limitations in U.C.C. 2-725. It is an action for breach of the sales contract rather than an action to collect a debt.”) (citations omitted); Troy Boiler Works, Inc v Sterile Technologies, Inc, 777 NYS 2d 574, 578; 3 Misc 3d 1006 (S Ct, 2003) (stating that the UCC article 2 limitations period applies to “any.. . claim on an account... since the underlying transaction was for the sale of goods and any such claims relate to and cannot be divorced from the underlying sales transaction”); Advance Tufting, Inc v Daneshyar, 259 Ga App 415, 417; 577 SE2d 90 (2003) (applying the UCC article 2 limitations period to “the instant suit on an open commercial account detailing transactions in which goods were sold”); Troyer v Cowles Prod Co, Inc, 732 NE2d 246, 247 (Ind App, 2000) (applying the UCC article 2 limitations period to a “claim on account arising from goods sold and delivered ... but not yet paid for”); Moorman Mfg Co of California, Inc v Hall, 113 Or App 30, 32; 830 P2d 606 (1992) (applying the UCC article 2 limitations period “to an account. . . claim involving an underlying sale of goods”); Deluxe Sales & Service, Inc v Hyundai Engineering & Constr Co, Ltd, 254 NJ Super 370, 374-377; 603 A2d 552 (1992) (applying the UCC article 2 limitations period to an action seeking to collect amounts due on open an account); Rivers Machinery Co, Inc v Barclay Int’l, Inc, 553 So 2d 579, 580 (Ala, 1989) (applying the UCC article 2 limitations period to a seller’s action against a buyer for failing “to pay the invoices for the period of May 5, *584 1982, through August 23, 1983”); Sprague & Henwood v Johnson, 606 F Supp 1564 (WD Va, 1985) (applying the UCC article 2 limitations period to the seller’s action to recover a debt on an open account); Greer Limestone Co v Nestor, 175 W Va 289, 291, 293; 332 SE2d 589 (1985) (applying the UCC article 2 limitations period in an action “to recover the remaining balance on an [open] account” comprised of “transactions involving the sale of goods”); Hughes v Collegedale Distrib, 355 So 2d 79 (Miss, 1978) (applying the UCC article 2 limitations period to an action arising out of the purchase of health foods on an open account); Sesow v Swearingen, 552 P2d 705, 706 (Okla, 1976) (applying the UCC article 2 limitations period to a “suit on an open account established by the sale of goods”); Big D Serv Co, Inc v Climatrol Indus, Inc, 523 SW2d 236 (Tex, 1975) (“[T]he four-year statute of limitations provided for in [article 2 of the UCC] should be applied to suits on sworn accounts ... in the context of an action for breach of a contract for sale. Suits on sworn accounts which are not founded on breach of contract for sale are not governed by this statute.”); Kinsey v Hubby-Reese Co, Inc, 530 SW2d 846, 846-847 (Tex Civ App, 1975) (“Suits on open accounts such as the instant case are governed by [the UCC article 2 limitations period]....”); Wilson v Browning Arms Co, 501 SW2d 705, 706 (Tex Civ App, 1973) (same); Aluminum Co of America v Electro Flo Corp, 451 F2d 1115, 1116 (CA 10, 1971) (applying the UCC in a suit brought “on an open account for goods sold and delivered”); see also 49 ALR 5th 1, § 10[a], pp 130-135 (discussing actions to collect on debt or open account in which the UCC limitations period was applied). Indeed, I am unaware of any authority reaching a contrary conclusion on this issue.

 In contrast, an account with a “single liability” is an account stated. Indeed, an account that has been closed and settled is precisely the type of account needed for an “account stated” claim. A Krolik & Co, 213 Mich at 7 (“An account stated means a balance struck between the parties on a settlement; and where a plaintiff is able to show that the mutual dealings which have occurred between the parties have been adjusted, settled, and a balance struck, the law implies a promise to pay that balance.”) (citation and quotation marks omitted); White, 25 Mich at 468 (“If the account had ceased to be an open one, it must have been because the circumstances had converted it into an account stated. There is no suggestion that the balance had been adjusted in any way, and consequently, the account could not have been settled.”).

 See A Krolik & Co, 213 Mich at 5 (“[T]he advantage which a creditor is considered to have in having his account stated — the amount fixed or determined by agreement, expressed or implied — over having an open account where the items composing it must be proved, is waived by the creditor where his action is brought and defended upon his account as an open account.”); Snyder v Patton & Gibson Co, 143 Mich 350, 352-353; 106 NW 1106 (1906) (concluding that it was proper for the trial court to submit evidence to the jury regarding the underlying transactions); Joslin v Cook, 341 Mich 236; 67 NW2d 56 (1954) (holding that the plaintiff had proved “several transactions” by the preponderance of evidence).

 In order to recover the amount due on an open account, the plaintiff may file and serve on the defendant an affidavit of the amount due with a copy of the account annexed to the affidavit, together with the complaint, and the affidavit shall be deemed prima facie evidence of the alleged indebtedness, unless the defendant files an answer and supporting affidavit denying the indebtedness and serves these documents on the plaintiff or his attorney. MCL 600.2145. Plaintiff filed and served on defendant such an affidavit along with a copy of the account and complaint. Defendant filed and served on plaintiff an answer and supporting affidavit denying the indebtedness. Thus, plaintiff will have the burden to prove as fact that it completed each and every disputed “contract for sale” that comprises the open account and that defendant is in breach of the same.

 Indeed, many other decisions of this Court also make it clear that an “amount owed on open account” claim does not constitute a single demand or encompass all debts accrued before that time. With the exception of when the parties have a mutual and open account current, *591 this Court has treated the limitations period as if it arose from the date of each item entered into the account. See, e.g., In re Hiscock Estate, 79 Mich 536, 537-538; 44 NW 947 (1890) (concluding that transactions occurring more than six years before the commencement of an “open account” claim are barred by the statute of limitations, except in cases of mutual and open account); McKnight v Lowitz, 196 Mich 368, 376-377; 163 NW 94 (1917) (holding that when the plaintiff had filed suit on March 26, 1915, the limitations period had run on his September 3, 1908, transaction but not his September 8, 1910, transaction, when it did not appear that he had a mutual and open account against the defendant); Hollywood v Reed, 55 Mich 308, 310-311; 21 NW 313 (1884) (holding that transactions that occurred more than six years before the commencement of suit would be barred by the statute of limitations unless the jury were to find that a disputed payment had been made, in which case the account would be open and mutual and the plaintiff could then recover on the whole account).

 The majority’s decision to apply a six-year limitations period to an “amount owed on open account” claim whereas a four-year limitations period is to be applied to the underlying sales transactions is problematic. If an underlying sales transaction has a four-year limitations period, but an “amount owed on open account” claim based on that sales transaction has a six-year limitations period, a seller can wait five years to bring an “amount owed on open account” claim against the buyer, and the buyer *593 will be unable to bring a counterclaim for breach of the underlying transaction (for example, breach of the warranty of merchantability) because the buyer’s separately applicable four-year limitations period will have already run.